UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KEVIN L. QUARLES, :
    Plaintiff, :
     :
v. : No. 2:23-cv-01601
     :
DOMINIC J. BONTEMPO and :
JASON GOLDBERG, :
    Defendants. :

**O P I N I O N**
**Defendant Goldberg's Motion to Dismiss, ECF No. 20 – Granted in Part, Denied in Part**
**Plaintiff's Motion for Reconsideration, ECF No. 38 - Denied**

**Joseph F. Leeson, Jr.**                                                                                  February 9, 2024
**United States District Judge**

## I. INTRODUCTION

Plaintiff Kevin Quarles, who is incarcerated at SCI-Phoenix, initiated the above-captioned action against his doctors pursuant to 42 U.S.C. § 1983 asserting violations of his constitutional rights arising from an alleged unnecessary operation performed on him, for which he allegedly did not consent. Defendant Jason Goldberg has filed a motion to dismiss for failure to state a claim and for failure to exhaust administrative remedies. For the reasons set forth below, the motion to dismiss is granted as to the Fourteenth Amendment equal protection claim but denied as to the Eighth Amendment deliberate indifferent claim.

## II. FACTUAL AND PROCEDURAL HISTORY

Quarles filed a Complaint in the above-captioned action alleging that while he was an inmate at SCI-Phoenix, Doctors Goldberg and Bontempo denied him equal protection in violation of the Fourteenth Amendment to be protected from cruel and unusual medical

treatment that violated the Eighth Amendment.  *See* Compl. IV 1, ECF No. 2.  Defendant Jason Goldberg is a physician employed at SCI-Phoenix.  *Id.* 2.  Defendant Dominic Bontempo is a vascular surgeon at Suburban Community Hospital.  *Id.*

The Complaint[1] alleges as follows:  On May 18, 2021, Goldberg caused prison officials to transport Quarles from SCI-Phoenix to Suburban Community Hospital so Bontempo could examine his right breast for gynecomastia.  Compl. IV 1.  Upon examination, Bontempo informed Quarles that he wanted to perform a mammogram of the breast and needed approval from the Department of Corrections.  *Id.*  That approval was given.  *Id.*  On July 23, 2021, Goldberg had Quarles transported back to Suburban Community Hospital.  *Id.*  There, Bontempo advised Quarles that he was not going to perform a mammogram as Quarles expected, but that he was going to perform a subcutaneous mastectomy instead.  *Id.*  Quarles responded that it was improper to perform a mastectomy without first performing a biopsy to determine if a subcutaneous mastectomy was needed.  *Id.*  Quarles informed Bontempo that he did not consent to a subcutaneous mastectomy.  *Id.*  Bontempo then switched the discussion to the cyst on Quarles's right shoulder, which Quarles agreed that Bontempo could remove.  Compl. IV 1.  Bontempo left the room, returning an hour later.  *Id.*  Upon his return, Bontempo asked Quarles whether he could perform a biopsy of the right breast, to which Quarles agreed.  *Id.*  While Quarles was under anesthesia, Bontempo, instead of biopsying Quarles's right breast, followed Goldberg's instructions and preformed a subcutaneous mastectomy, for which he did not have Quarles's permission.  *Id.*

---

[1]     The official capacity claims against Goldberg and Bontempo have been dismissed.  *See* ECF No. 7.

Goldberg filed a Motion to Dismiss the Complaint[2] arguing: (1) the Complaint fails to state a cause of action against Goldberg based on deliberate indifference to a serious medical need; (2) the Complaint fails to state a cause of action based on the Fourteenth Amendment; and (3) Quarles failed to exhaust administrative remedies.  *See* Mot. Dismiss, ECF No. 20.  To support the exhaustion argument, Quarles's grievance dated December 1, 2021, is attached to the Motion to Dismiss.  *See* Grievance, ECF No. 20-3.  So that the grievance could be considered, this Court issued an Order converting Defendant Goldberg's Motion to Dismiss into one for summary judgment.  *See* ECF No. 23.  Quarles has responded to the Motion, attaching the grievance appeal response and final appeal decision.  *See* Resp. and Exs. A-B, ECF No. 30.  Goldberg has filed a Reply.  *See* ECF No. 34.

The grievance documents show the following: On December 1, 2021, Quarles filed a grievance with the Pennsylvania Department of Corrections complaining that on November 23, 2021,[3] he was taken to Suburban Community Hospital where he was informed that "SCI-Phoenix (Ms. Levy) scheduled the wrong type of operation . . . it was suppose to be a[] biopsy. . . ."  *See* Grievance.  Instead, the grievance alleges, Ms. Levy scheduled him for a subcutaneous mastectomy, not a biopsy or a mammogram.  *Id.*  Quarles states that he informed the hospital that he did not want surgery on his right breast, but they performed a subcutaneous mastectomy.  *Id.*  A copy of the prison's initial grievance is not in the record; however, it is mentioned in the Facility Manager's Appeal Response.  *See* Ex. A ("As indicated in the initial review response, I

---

[2]   Bontempo filed an Answer to the Complaint with a crossclaim against Goldberg.  ECF No. 21.  Goldberg responded to the crossclaim.  ECF No. 22.
[3]   Although the grievance gives a different date for the medical treatment than the complaint, the prison knew the correct date.  Thus, this discrepancy has not been raised.

find that you were being followed by medical for a mass on your right breast whereas you were referred for general surgery.").

The Facility Manager's Appeal Response summarizes Quarles's grievance appeal, *inter alia*: ". . . [y]ou state you should have never been referred by Dr. Goldberg for surgery. . . there was no evidence on record to indicate surgery was warranted." *See* Ex. A. The Facility Manager had "nothing further to add" to the initial review response that Quarles was "being followed by medical for a mass on [his] right breast whereas [he was] referred for general surgery." *See id.* The Facility Manager found that although Quarles initially refused surgery at Suburban Community Hospital, he changed his mind and consented to the performed procedure. *See id.*

The Final Appeal Decision states that prison staff has "thoroughly reviewed [Quarles's] medical record and has determined that the medical care provided was reasonable and appropriate" and that while at Suburban Community Hospital, Quarles signed an authorization and consent for a subcutaneous mastectomy. *See* Ex. B. The staff "found no evidence of wrongdoing" and denied relief. *See id.*

In addition to the Motion to Dismiss, also pending is a Motion for Reconsideration, *see* ECF No. 38, filed by Quarles from this Court's Order dated November 28, 2023, *see* ECF No. 33. That Order denied Plaintiff's Motion for a Restraining Order asking that counsel for Defendants be directed to send mail directly to Quarles at the prison instead of to the Smart Communications Center in Florida, *see* ECF No. 31.

III.     **LEGAL STANDARDS**

    A.     **Motion to Dismiss – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    **B.**  **Motion for Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *But see Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993) (holding that "unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment"). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

        C.       **Motion for Reconsideration – Review of Applicable Law**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through--rightly or wrongly."  *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp.

1109, 1122 (E.D. Pa. 1993) (internal quotations omitted).  "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

    **D.**    **Eighth Amendment  (inadequate medical care)- Review of Applicable Law**

To state an Eighth Amendment claim regarding the inadequacy of medical care, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind."  *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011).  The "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs [because i]t is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A medical need is serious if it has been diagnosed by a physician as requiring treatment or so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to a prisoner's health.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  However, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients.  *Young v. Kazmerski*, 266 Fed. Appx. 191, 194 (3d Cir. 2008).  Mere negligence in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06.  Disagreement as to proper care also does not support a finding of deliberate indifference.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

### E.     Fourteenth Amendment  (equal protection) – Review of Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v.* Doe, 457 U.S. 202, 216 (1982)).  "[T]o state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (2) he was treated differently from similarly situated inmates." *Landis v. Wilson*, No. 1:19-CV-1301, 2021 U.S. Dist. LEXIS 189468, at *30 (M.D. Pa. Sep. 30, 2021) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  A plaintiff "must prove the existence of purposeful [or intentional] discrimination." *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).  "Discriminatory intent implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (internal quotations omitted).  "Under this theory of equal protection [protected class], the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class." *Henry v. Buskirk*, No. 08-1348, 2011 U.S. Dist. LEXIS 109567, at *22-23 (E.D. Pa. Sep. 26, 2011).

"If the action does not involve a suspect classification, the plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose." *Henry*, 2011 U.S. Dist. LEXIS 109567, at *22-23; *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Under the "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently

from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

### F. Prisoner Exhaustion of Administrative Remedies – Review of Applicable Law

"Prisoners seeking to challenge the conditions of their confinement are subject to the PLRA [Prisoner Litigation Reform Act], which mandates exhaustion of all available administrative remedies before bringing a lawsuit." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020) (citing 42 U.S.C. § 1997e(a)). "The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"[4] *Downey*, 968 F.3d at 304 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "A prisoner's failure to follow these procedural rules will result in a procedural default of his claims." *Wong v. Betti*, No. 1:22-cv-01063, 2023 U.S. Dist. LEXIS 135436, at *12 (M.D. Pa. Aug. 3, 2023) (citing *Spruill v. Gillis*, 372 F.3d 218, 230-32 (3d Cir. 2004)). "[A]ll claims relating to prison life that do not implicate the duration of the prisoner's sentence" are subject to the exhaustion requirement. *Simmons v. Gilmore*, No. 2:17-cv-00996, 2021 U.S. Dist. LEXIS 61677, at *20-21 (W.D. Pa. Mar. 31, 2021) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Jones v. Bock*, 549 U.S.

---

[4] "The PLRA itself does not have a 'name all defendants' requirement. . . . However, prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process." *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). Prison policy, DC-ADM 804, states, in pertinent part: "The inmate shall identify individuals directly involved in the event(s)."

9
020924

199, 219 (2007)).

**IV.    ANALYSIS**

    **A.    The motion to dismiss the deliberate indifference claim is denied.**

Initially, although the grievance did not name Goldberg, the prison excused this omission.  "[T]he prison can excuse an inmate's failure to [identify individuals] by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance."  *Spruill*, 372 F.3d at 234.  "A plaintiff's failure to identify individuals in his grievance also may be excused where the prison conducts an internal investigation and relies upon that investigation in its grievance response."  *Chaney v. Bednaro*, No. 1:19-cv-00005, 2020 U.S. Dist. LEXIS 245096, at *13 (W.D. Pa. Dec. 31, 2020).

Here, although the prison did not name Goldberg, it reviewed the medical referral for surgery, which was made by Goldberg, and considered this referral as part of the grievance review.  Additionally, the prison's responses to Quarles's grievance explained that as part of the grievance review the prison investigated the medical treatment Quarles received for the mass on his right breast, including his referral to the Suburban Community Hospital for surgery and the procedure that was performed at the Hospital.  *See* Ex. B (The Final Appeal Decision states, *inter alia*, prison staff "thoroughly reviewed [Quarles's] medical record and has determined that the medical care provided was reasonable and appropriate.").  The prison therefore excused Quarles's failure to specifically name Goldberg in his grievance.  *See Diaz v. Palakovich*, 448 F. App'x 211, 216-17 (3d Cir. 2011) (concluding that the district court erred in determining that the inmate's failure to name individual defendants in his grievances amounted to a procedural default under the PLRA because the prison excused the deficiency in acknowledging receipt of the grievance and acknowledging in its response that the mailroom staff was within the compass

10
020924

of the grievance); *Bracey v. Valencia*, No. 19-1385, 2022 U.S. Dist. LEXIS 142552, at *14 (W.D. Pa. Aug. 10, 2022 (refusing to dismiss for failure to exhaust because although the plaintiff failed to identify the defendant or raise any allegations regarding the defendant in his grievance, the prison acknowledged and investigated the defendant's conduct in relation to the complaint). Moreover, "the benefits of exhaustion[, which] include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record," *see Jones*, 549 U.S. at 219-20, have been satisfied here.

Accepting the factual allegations as true and construing the Complaint in the light most favorable to Quarles, the allegations are sufficient to state a claim against Goldberg for deliberate indifference to medical care.

The request to dismiss the Eighth Amendment claim is therefore denied.

**B.     The Fourteenth Amendment claim against Goldberg is dismissed.**

Quarles's grievance does not allege or give any suggestion that he was denied equal protection. Further, there is no indication that the prison recognized or investigated any such claim. Quarles therefore failed to exhaust his claim that Goldberg denied him equal protection in violation of the Fourteenth Amendment and it is now procedurally defaulted. *See Jones v. Maher*, 131 F. App'x 813, 815 (3d Cir. 2005) (stating that an inmate's claim that the defendants intentionally or purposefully discriminated against him in violation of his equal protection rights requires exhaustion); *Lane v. Tavares*, No. 3:14-CV-00991, 2019 U.S. Dist. LEXIS 64728, at *22-23 (M.D. Pa. Apr. 16, 2019) (dismissing the equal protection claim for the inmate's failure to exhaust administrative remedies because although one of the grievances mentioned the

Fourteenth Amendment, not one mentioned any discrimination on the basis of his race or a discriminatory prison assignment policy).

Even if Quarles had exhausted this claim, the allegations in the Complaint are insufficient to state a violation of the Fourteenth Amendment.[5] Quarles does not allege that he is the member of a protected class or that any medical decisions were made on the basis of such class. *See Basemore v. Voorstad*, No. 1:22-CV-01700, 2024 U.S. Dist. LEXIS 18173, at *20 (M.D. Pa. Feb. 1, 2024) (dismissing the equal protection claim for the plaintiff's failure to allege that she is a member of a protected class); *McClure v. Haste*, No. 1:14-CV-2249, 2016 U.S. Dist. LEXIS 20031, *24-25 (M.D. Pa. Feb. 19, 2016) (dismissing the equal protection claim because the plaintiff failed to allege facts from which it can be concluded that the defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of a protected class). Quarles also fails to allege that he was treated differently by Goldberg than any similarly situated inmate. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (concluding that the inmate failed to state an equal protection claim under the class-of-one theory because he failed to allege facts showing that he was similarly situated to the inmates who received different treatment); *Hensley v. Bucks Cty. Corr. Facility*, No. 15-6098, 2016 U.S. Dist. LEXIS 106095, at *22-23 (E.D. Pa. Aug. 11, 2016) (dismissing the equal protection claim for failure to state a claim because the plaintiff did not

---

[5] Quarles's Fourteenth Amendment claim is based on the alleged denial of equal protection. However, even if this Court were to construe a substantive due process claim based on inadequate medical care, it would be dismissed as redundant of the Eighth Amendment claim. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (concluding that the Fourteenth Amendment substantive due process claim was redundant of the Eighth Amendment excessive force claim); *McClain v. Alveriaz*, No. 07-5551, 2008 U.S. Dist. LEXIS 96409, at *19 (E.D. Pa. Nov. 25, 2008) (dismissing the prisoner's Fourteenth Amendment due process claim as "merely duplicative" of the Eighth Amendment excessive force claim).

allege that the defendants treated him differently than any other inmate or similarly situated individual). The allegations are insufficient to state an equal protection claim against Goldberg.

Although a plaintiff should normally be given leave to amend when his claims are dismissed for failure to state a claim, such leave is not necessary when an amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Here, there are absolutely no allegations, in either the Complaint or Response in opposition to the Motion to Dismiss, to suggest that Quarles was treated differently than anyone similarly situated or that Goldberg purposefully discriminated against Quarles in providing medical treatment. Leave to amend would therefore be futile. *See Burk v. Taylor*, No. 22-4747, 2023 U.S. Dist. LEXIS 210838, at *7 (E.D. Pa. Nov. 28, 2023) (concluding that in the absence of any allegations that the medical defendants engaged in conduct implicating the Equal Protection Clause, it would be futile to allow leave to amend the Fourteenth Amendment claim); *Davis v. Pa. Dep't of Corr.*, No. 15-503, 2016 U.S. Dist. LEXIS 35251, at *21-24 (W.D. Pa. Mar. 18, 2016) (considering the prisoner's claim that he was denied equal protection of the laws because he was not monitored for his chronic medical condition as were other inmates with chronic conditions under the class-of-one theory and dismissing without leave to amend because the allegations did not not suggest any purposeful discrimination). Moreover, Quarles failed to exhaust an equal protection claim against any prison official and it is now procedurally defaulted. *See Shifflett*, 934 F.3d at 364. The Fourteenth Amendment equal protection claim against Goldberg is dismissed with prejudice.

      **C.**      **Quarles's Motion for Reconsideration is denied.**

In his Motion for Reconsideration, Quarles does not present an intervening change in controlling law, the availability of new evidence that was not available on November 28, 2023, or the need to correct a clear error of law or fact or to prevent manifest injustice. Rather, he

points to subsections of Department of Corrections ("DOC") policy statement DC-ADM 803, which were not mentioned in the Order denying his request that counsel for Defendants be directed to send mail directly to him at the prison instead of the Smart Communications center in Florida. Although the entirety of DC-ADM 803 was not discussed in the Order denying relief, it was considered, among other things, by the Court. There is nothing unusual about the above-captioned action to persuade this Court to circumvent the prison's general mail policy. Reconsideration is denied.

## V.    CONCLUSION

Quarles filed a grievance complaining about the medical care he received related to a mass on his right breast, specifically his referral to an outside hospital for surgery and the procedure performed there. The failure of the grievance to name Goldberg is not fatal because the prison investigated the medical treatment of Quarles including Goldberg's referral. The Eighth Amendment claim was therefore exhausted and, in light of allegations that Goldberg ordered a subcutaneous mastectomy instead of a biopsy and that a mastectomy was performed without Quarles's consent, is sufficient to state a claim. Conversely, Quarles failed to allege any facts in either his grievance or the Complaint showing that he was treated differently than any similarly situated individual or that Goldberg's medical decisions were based on purposeful discrimination. The Fourteenth Amendment claim is therefore dismissed with prejudice.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge