UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KEVIN L. QUARLES,                          :
    Plaintiff,                             :
                                           :
    v.                                     :          No. 2:23-cv-1601
                                           :
DOMINIC J. BONTEMPO and                    :
JASON GOLDBERG,                            :
    Defendants.                            :

_____

**O P I N I O N**
**Defendant Goldberg's Motion for Summary Judgment, ECF No. 67**
**Defendant Bontempo's Motion for Summary Judgment, ECF No. 69**

**Joseph F. Leeson, Jr.**                                    **July 2, 2025**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Kevin Quarles, who is incarcerated at SCI-Phoenix, initiated the above-captioned action against his doctors pursuant to 42 U.S.C. § 1983 asserting violations of his constitutional rights arising from an alleged unnecessary operation performed on him, for which he allegedly did not consent. For the reasons set forth below, summary judgment is granted in favor of Defendants.

## II. BACKGROUND

### A. Procedural History

On or about April 24, 2023, Quarles initiated the above-captioned action, alleging that Doctors Bontempo and Goldberg violated his rights under the Eighth and Fourteenth Amendments by performing a mastectomy that he did not consent to. *See* ECF No. 2. A few weeks later, this Court dismissed the official capacity claims only. *See* ECF Nos. 6-7. After

service of the Complaint, Bontempo filed an Answer with a crossclaim against Goldberg.  *See*
ECF No. 21.  Goldberg moved to dismiss the Complaint and answered the crossclaim.  *See* ECF
Nos. 20-21.  The Motion to Dismiss was granted in part and the Fourteenth Amendment claim,
which was construed as alleging a violation of Quarles's equal protection rights, against
Goldberg was dismissed.  *See* ECF Nos. 40-41.  Goldberg thereafter answered the Complaint,
asserting a crossclaim against Bontempo.  *See* ECF No. 42.  The parties proceeded to discovery.

   With discovery closed, Bontempo and Goldberg have each moved for summary
judgment.  *See* Goldberg SJ, ECF No. 67; Goldberg Stmt Facts, ECF No. 68; Bontempo SJ, ECF
No. 69.  Quarles responded in opposition to the motions.  *See* Pl. Resp. Bontempo, ECF No. 73;
Pl. Resp. Goldberg SJ, ECF No. 71.  Bontempo and Goldberg filed reply briefs.  *See* Bontempo
Reply, ECF No. 74; Bontempo Sec. Reply, ECF No. 88; Goldberg Reply, ECF No. 72.

   Less than a month later, on November 26, 2024, this Court issued a stay based on the
Voluntary Petition for Non-Individuals Filing Bankruptcy for relief under Chapter 11 filed by
Wellpath Holdings, Inc. in the United States Bankruptcy Court for the Southern District of
Texas.  *See* ECF No. 79.  Shortly after the stay was issued, Quarles filed summary judgment
motions and/or[1] supplemental responses to Defendants' Motions for Summary Judgment.  *See* Pl.

---

[1]    The first page of each filing states that Plaintiff's "Motion for Summary Judgment" to
Defendant Dominic Bontempo, Jr. or Defendant Jason Goldberg is enclosed.  *See* Pl. Supp. Resp.
Bontempo SJ, ECF No. 80; Pl. Supp. Resp. Goldberg SJ, ECF No. 83.  However, the second
page of each filing states that it is Plaintiff's "Response to Defendant" Dominic J. Bontempo, Jr.
or Defendant Jason Goldberg.  *See id.*  Each filing was docketed as a motion but neither filing
contains a statement of material facts or any citation to the record as required by, *inter alia*, the
Order dated February 14, 2024.  *See* ECF No. 43 ("Any motion for summary judgment pursuant
to Rule 56 of the Federal Rules of Civil Procedure must be accompanied by a separate, short, and
concise statement, in numbered paragraphs, of the material facts as to which the moving party
contends there is no genuine issue to be tried.").  To the extent these filings were intended to be
motions, each lacks merit because Quarles failed to meet his burden of proof.  *See Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the party moving for summary judgment bears
the burden of showing the absence of a genuine issue as to any material fact).  Owing deference

Supp. Resp. Bontempo SJ, ECF No. 80; Pl. Supp. Resp. Goldberg SJ, ECF No. 83.  The stay was lifted on May 28, 2025, following confirmation of the plan of reorganization under Chapter 11 of the Bankruptcy Code filed by Wellpath Holdings, Inc.  *See* ECF No. 87.  Thereafter, Bontempo, construing Quarles's interim filing (ECF No. 80) as a supplemental response, filed a supplemental reply.  *See* Bontempo Supp. Reply., ECF No. 88. Goldberg construed Quarles's filing (ECF No. 83) as a motion and filed a response, which this Court treats as a supplemental reply.  *See* Goldberg Supp. Reply, ECF No. 89.

### B.    Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."

In Defendants' Statements of Undisputed Material Facts, filed in support of their Motions for Summary Judgment, each fact is properly supported by a citation to the record and the cited record is attached as an exhibit.  *See* Bontempo Stmt Facts, ECF No. 69-2; Goldberg Stmt Facts. Quarles, however, has not filed a counter statement of material facts, as required by this Court's scheduling Order dated May 7, 2019, and by its Policies and Procedures, both of which outline the required content for briefs and responses to dispositive motions.  *See* Policies and Procedures Section II(F); Order 3(c), ECF No. 43.  Each warns the parties that "[a]ll facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted." *See id.*  Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, Defendants'

---

to pro se parties and in an abundance of caution, this Court therefore treats the filings as supplemental responses to Defendants' motions.

Statements of Undisputed Material Facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts). However, in light of Quarles's pro se status, the Court will not deem any fact undisputed to the extent such fact is contested in his responses to the summary judgment motions or a contrary allegation was made in the Complaint. To the extent any of the facts discussed below are disputed, they are so noted and distinguished accordingly.

### C.    Undisputed Material Facts

At all times relevant to this action, Quarles was incarcerated at SCI-Phoenix. *See, e.g.* Ex. B,[2] ECF No. 67-3 (medical records). On February 8, 2021, Quarles presented to prison triage complaining of a right breast mass and was seen by Defendant Jason Goldberg, MD. *See* Ex. B at 213. Goldberg planned to get an ultrasound to see if it was cystic or solid and to order an x-ray for tissue density. *See id.* at 213, 216. Two days later, Quarles complained of pain in his right chest and was advised that he needed to wait for the ultrasound. *See id.* at 211. An ultrasound was conducted on February 19, 2021. *See* Ex. C at 114, ECF No. 67-4 (medical

---

[2]      All references to exhibits A through G refer to the exhibits attached to Bontempo's Motion for Summary Judgment. *See generally* ECF No. 67. To the extent that one of Goldberg's exhibits contains information not found in the exhibits provided by Bontempo, this Court refers to the page number assigned by the court's electronic filing system to Goldberg's exhibits, which are found at ECF No. 69-3.

records).  The ultrasound, which Goldberg reviewed, was suggestive of gynecomastia.  *See id.*
On February 24, 2021, Goldberg ordered additional tests.  *See* Ex. B at 203.

On March 10, 2021, Quarles asked for his ultrasound results.  *See id.* at 193.  By March
19, 2021, the breast mass had increased in size and was more painful.  *See id.* at 189; ECF No.
69-3 at 26.  Quarles was seen by Dr. Carol Annino at SCI-Phoenix, whose plan was to repeat the
ultrasound and consider a mammogram.  *See id.*  A repeat ultrasound was conducted on April 2,
2021, and confirmed that the mass had "increased moderately in size."  *See* Ex. C at 104.
Goldberg reviewed the results.  *See id.*  On April 21, 2021, Goldberg referred Quarles for a
consult to an off-site doctor, Defendant Bontempo.  *See* Ex. B at 252.

Bontempo saw Quarles for a consult on May 18, 2021, for a cyst in his right breast.  *See*
Ex. C at 20-21.  Quarles reported that his symptoms began six months prior and were "moderate"
and "chronic."  *See id.*  Bontempo, who did not have the ultrasound prior to the visit,
recommended a mammogram but discussed with Quarles the possibility of excision.  *See id.*
Bontempo sent his plan for a mammogram and return for reevaluation to the prison, which was
approved by PA Kaminsky.  *See id.* at 103.

At the consult appointment, Bontempo also discussed the soft mass (ganglion cyst)
Quarles had in his right shoulder, which had been present for years.  *See id.* at 20-21.  It was
asymptomatic but Bontempo opined that it would be reasonable to remove.  *See id.*  He
explained the procedure to Quarles, including risk complications and alternatives, and Quarles
consented to surgery on his shoulder.  *See id.*

The day after the consult, on May 19, 2021, Bontempo received the ultrasound of Quarles
right breast.  *See id.* at 20-21.  He determined that it was sufficient and would recommend a right
subcutaneous mastectomy.  *See id.*  Bontempo noted that he would schedule a mastectomy at the

same time as the surgery on Quarles's shoulder and would further explain this to Quarles prior to the surgery. *See id.*

On July 9, 2021, PA Walsh ordered pre op labs. *See* Ex. B at 138-139. That day, PA Walsh performed a history and physical for the right subcutaneous mastectomy and excision of ganglion cyst on right shoulder scheduled for July 23, 2021. *See* Ex. C at 18.

On July 22, 2021, Quarles saw RN Adams in the infirmary at SCI-Phoenix. *See* Ex. B at 137. RN Adams noted that Quarles, who stated that he was "not getting no surgery until they do all the testing," was back and forth with his decision to refuse or go to his appointment the following day. *See id.* He ultimately decided to stay in the infirmary and go to his appointment. *See id.* The next day, Quarles was taken to his appointment. *See id.* at 136.

On July 23, 2021, at 7:10 A.M., Quarles consented to excision of the ganglion cyst in his right shoulder, but refused a mastectomy.[3] *See* Ex. C at 27-28 (medical reports by PA Sedlak and by Bontempo). Bontempo advised Quarles of the risks of not getting the mastectomy and that the mass could be breast cancer, but Quarles refused. *See id.* Quarles continued to refuse to have the breast mass excised according to Bontempo's notes from 8:52 A.M. that morning. *See id.* Bontempo noted that the process was explained to Quarles several times. *See id.* Quarles wanted to know if it was cancer before it was removed, to which Bontempo explained that removing it was the only way to find out if it was cancer. *See id.* Bontempo informed Quarles that the chances were "good" that it was benign but that they would not know until pathology was done. *See id.* Bontempo advised Quarles that because there was a chance of cancer, he was

---

[3]     Medical records from the hospital indicate that on July 23, 2021, at 7:10 A.M. Dr. Chernyak, anesthesiologist, discussed the procedure "in detail" with Quarles and that Quarles consented to surgery, but the records do not clarify whether the procedure discussion related to the breast or shoulder. *See* Ex. C at 24.

risking his life by not having it excised and that leaving it in for longer was not recommended. *See id.* Quarles stated that he understood and still refused. *See id.* Bontempo explained that the mastectomy would result in a little irregularity in the skin, but Quarles was skeptical and believed he would have a tremendous deformity. *See id.* Quarles did consent to having the cyst in his shoulder excised, which Bontempo agreed to perform. *See id.*

According to medical records, Quarles changed his mind about the mastectomy approximately thirty minutes later.[4] *See* Ex. C at 27-28. The records state that Bontempo explained the procedure to Quarles in detail, including the risk of numbness and infection. *See id.* Quarles purportedly stated that he understood and consented to have both procedures: the excision of the mass/cyst in his shoulder and the excision of the mass in his breast. *See id.*

Quarles signed a form consenting to both procedures.[5] *See id.* at 48-49. Bontempo also signed the consent form. *See id.* Quarles signed a separate consent form to anesthesia, which the anesthesiologist also signed. *See* ECF No. 69-3 at 63-64 (Ex. H).

Both surgeries (right subcutaneous mastectomy and excision of ganglion cyst from right shoulder) were performed on April 23, 2021. *See* Ex. B at 135; Ex. D at 148, ECF No. 67-5 (medical records). Later that day, Quarles returned to SCI-Phoenix, stating that everything was fixed and denying any injuries from his trip. *See* Ex. B at 135. He was evaluated by RN Voltz, who noted that Quarles's right breast was very swollen and bruised at the surgical site. *See id.*[6]

---

[4]  Quarles disputes that he consented to a mastectomy. *See, e.g.* Compl. 5-6, ECF No. 2. He alleges that he agreed only to a biopsy of his right breast and to excision of the cyst on his shoulder. *Cf. id. with* Pl. Resp. Goldberg SJ at 5, 7 (asserting that Quarles wanted the mammogram instead of a mastectomy).

[5]  Quarles does not dispute that he signed the form, but contends that he was "pressured," "forced," and "tricked" into consenting to the mastectomy. *See* Pl. Resp. Goldberg SJ at 6-8.

[6]  RN Voltz also noted no bruising or swelling to the surgical site on Quarles's upper arm. *See* Ex. B at 135.

Quarles was seen by prison medical at least six times in the following three months to check on his chest and the surgical site.  *See* Ex. B at 115, 121-134.  As of October 4, 2021, the swelling in his right breast had not gone down since the surgery.  *See id.* at 115.

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *But see Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993) (holding that "unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment").  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.      Section 1983 claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

**C.      Eighth Amendment (inadequate medical care) - Review of Applicable Law**

To state an Eighth Amendment claim regarding the inadequacy of medical care, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a

sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011).

The "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs [because i]t is only such indifference that can offend

'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429

U.S. 97, 106 (1976). A medical need is serious if it has been diagnosed by a physician as

requiring treatment or so obvious that a lay person would easily recognize the necessity for a

doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347

(3d Cir. 1987). Deliberate indifference occurs when a prison official knows of and disregards an

excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However,

prison medical authorities are given considerable latitude in the diagnosis and treatment of

inmate patients. *Young v. Kazmerski*, 266 Fed. Appx. 191, 194 (3d Cir. 2008). Mere negligence

in diagnosing or treating a medical condition does not state a valid claim under the Eighth

Amendment. *Estelle*, 429 U.S. at 105-06. Disagreement as to proper care also does not support

a finding of deliberate indifference. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

> ### D.    Fourteenth Amendment – Review of Applicable Law

Convicted prisoners "retain a limited right to refuse treatment and a related right to be

informed of the proposed treatment and viable alternatives." *Id.* at 113. "The right is protected

substantively by the Due Process clause of the Fourteenth Amendment." *Id.* at 112. "A

prisoner's right to refuse treatment is useless without knowledge of the proposed treatment.

Prisoners have a right to such information as is reasonably necessary to make an informed

decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable

alternative treatments that can be made available in a prison setting." *Id.* at 113.[7]

## IV.    ANALYSIS[8]

### A.    Summary judgment is granted in favor of Goldberg as to the Eighth Amendment claim.

Quarles alleged in the Complaint that Goldberg "changed the order from a mammogram to that of a subcutaneous mastectomy," *see* Compl. at 19, but has offered no evidence to support this assertion. To the contrary, the medical records show that Bontempo independently made the determination that a right subcutaneous mastectomy, instead of a mammogram, was appropriate. *See* Ex. C at 21. Accordingly, Quarles's unsupported allegation that Goldberg ordered a mastectomy fails to support his claim. *See Enright v. United States*, No. 1:14-CV-103, 2018

---

[7]    "In practice, courts have applied a three-part test in assessing inmate substantive due process claims based upon the failure to inform prisoners of medical treatment options which denied the inmates the right to make informed choices concerning the right to refuse treatment." *Leaphart v. Prison Health Servs.*, No. 3:10-CV-1019, 2010 U.S. Dist. LEXIS 135435, at *19 (M.D. Pa. Nov. 22, 2010). "To sustain an 'informed consent' substantive due process claim, the prisoner must prove that (1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment." *Farmer-Shaw v. Former SEC John Wetzel*, No. 1:22-CV-00336-RAL, 2024 U.S. Dist. LEXIS 173702, at *9 (W.D. Pa. Sep. 25, 2024) (internal quotations omitted).

[8]    Because Quarles was treated by Goldberg, who referred him to Bontempo for a consult, after he reported to the prison infirmary, as opposed to privately retaining either doctor's services, there is at least a dispute of fact that Goldberg and Bontempo are state actors. *See West*, 487 U.S. at 56 ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."); *Leaphart*, 2010 U.S. Dist. LEXIS 135435, at *31 (explaining that "while a few cases have held that a private[] physician treating an inmate outside of a jail is not a state actor; the more broadly accepted view is that a private doctor who accepts a medical referral of an inmate's care from his jailers also accepts the state's constitutional responsibilities to provide adequate care to that inmate and is, therefore, a state actor with respect to medical issues relating to that prisoner" (internal citations omitted). There is also at least a dispute of fact that Quarles's medical needs were sufficiently serious. *See* Ex. C at 28 (Bontempo informed Quarles that if he did not consent to a mastectomy he was "risking his life").

U.S. Dist. LEXIS 168748, at *37 (M.D. Pa. Sep. 28, 2018) (granting summary judgment in favor of the wardens, who allegedly had the plaintiff-prisoner prematurely discharged from the hospital, because "the uncontroverted medical records plainly indicate that [the plaintiff's] treating physicians discharged him from the hospital because he completed his rehabilitation, and they believed he was ready to be discharged").

Quarles's attempt to hold Goldberg vicariously liable for Bontempo's actions is unavailing because Goldberg must have been personally involved. *See Rode*, 845 F.2d at 1207 (holding that § 1983 liability cannot be predicated on respondeat superior). Aside from referring Quarles to Bontempo for a consult, there is no evidence that Goldberg had any discussions with Bontempo regarding the proper course of treatment or was otherwise involved with Quarles's treatment by Bontempo. Quarles has therefore failed to show Goldberg's personal involvement. *See Johnson v. Schneider*, No. 19-415, 2023 U.S. Dist. LEXIS 215755, at *5 n.2 (E.D. Pa. Dec. 5, 2023) (dismissing § 1983 claim against the prison doctor because he was not involved with the allegedly botched dental care).

Moreover, even if Goldberg knew and approved of Bontempo's plan to perform a mastectomy,[9] this would be insufficient to prove an Eighth Amendment claim because there was no underlying constitutional violation. *See A.M. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (holding that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced *in his subordinates' violations*" (emphasis added)). For the reasons set forth in greater detail below, the evidence does not show that

---

[9] Quarles has not presented any evidence showing that Goldberg approved of the plan for a mastectomy. Further, the medical records state that it was PA Kaminsky, not Goldberg, who approved Bontempo's initial plan for a mammogram. *See* Ex. C at 103.

Bontempo was deliberately indifferent to Quarles's medical needs.  Rather, the evidence shows that after Bontempo met with Quarles, understood the history of his symptoms, conducted a physical exam, and reviewed the ultrasound, he concluded that a mastectomy was appropriate. *See* Ex. C. at 20-21. *See also Brown v. Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (holding that a doctor exercising professional judgment does not violate a prisoner's constitutional rights).  In the absence of a constitutional violation by Bontempo, it necessarily follows that Goldberg did not violate Quarles's constitutional rights based on Bontempo's treatment.

Additionally, Quarles has offered no evidence showing that Goldberg was deliberately indifferent to his medical needs.  There is no dispute, nor evidence to the contrary, that Goldberg provided Quarles timely medical care prior to his referral to Bontempo.  "[W]hen medical care is provided, [courts] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).  *See also Clark v. Doe*, No. 99-5616, 2000 U.S. Dist. LEXIS 14999, at *8 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."); *Gindraw v. Dendler*, 967 F. Supp. 833, 837 (E.D. Pa. 1997) (granting the defendant's motion for summary judgment on the Eighth Amendment improper medical care claim because "Plaintiff may be dissatisfied with the treatment he received, but it is clear that he was treated extensively").  Goldberg first treated Quarles when he presented to prison triage complaining of a right breast mass on February 8, 2021.  *See* Ex. B at 213.  Less than two weeks later, an ultrasound was conducted.  *See* Ex. C at 114.  Five days after that, Goldberg ordered additional tests.  *See* Ex. B at 203.  Because the breast mass had increased in size and was more painful, a repeat ultrasound was conducted on April 2, 2021.  *See* Ex. C at

104.  On April 21, 2021, Goldberg referred Quarles to Bontempo for an initial consult.  *See* Ex. B at 252.  This treatment negates any suggestion of deliberate indifference and does not rise to an Eighth Amendment violation.  *See McCluskey v. Vincent*, 505 F. App'x 199, 203 (3d Cir. 2012) (rejecting the inmate's Eighth Amendment claim based on the doctor's decision not to order an immediate biopsy or consultation because there was no evidence that the decision was made with deliberate indifference to the inmate's condition or based on anything other than medical judgment); *Charleston v. Corizon Health, Inc.*, No. 17-3039, 2018 U.S. Dist. LEXIS 62020, at *39 (E.D. Pa. Apr. 12, 2018) (finding no deliberate indifference by prison medical personnel who, over the course of eight months, "responded to his sick call requests, prescribed medications, performed examinations, consulted with physicians, and ordered diagnostic tests" but failed to diagnose the inmate's cancer).  There is also no dispute, nor evidence to the contrary, that Goldberg's referral to Bontempo was timely and proper.  *See White*, 897 F.2d at 113 (holding that a prison doctor's medical judgment "will be presumed valid unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment"); *Green v. Ferdarko*, No. 15-45 Erie, 2017 U.S. Dist. LEXIS 201702, at *54 (W.D. Pa. Dec. 6, 2017) (granting summary judgment on the Eighth Amendment claim in favor of the prison doctor who, more than six months after the prisoner's injury, referred the prisoner for an outside consultation).

Consequently, summary judgment is granted in favor of Goldberg on the Eighth Amendment claim.

**B.    Summary judgment is granted in favor of Goldberg as to any Fourteenth Amendment claim.**[10]

Quarles's Fourteenth Amendment claim does not fit neatly into a claim based on lack of consent. However, this Court will consider his allegations that he did not consent to a mastectomy under the substantive due process protections of the Fourteenth Amendment. The differences between a Fourteenth Amendment and Eighth Amendment claim have been aptly explained as follows:

> When considering inmate medical claims premised upon an alleged failure to inform, as well as deliberate indifference to medical needs, it is important to note that the contours of these two constitutional rights differ, and conduct which may not violate the Eighth Amendment might still deny an inmate his substantive due process right to refuse certain forms of treatment. For example, an inmate suffering from cancer may be presented with a series of treatment options, some of which involve invasive surgery and removal of body organs, while other forms of treatment may be less radical and invasive. A disagreement between the prisoner and his doctors regarding which treatment option to pursue, standing alone, may not constitute an Eighth Amendment violation. *See e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation). However, if prison doctors unilaterally took it upon themselves to conduct surgery without the inmate's knowledge or consent, that action might still violate the substantive due process rights of the prisoner, even if the surgery fell within the range of medical treatment options permitted under the Eighth Amendment. *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006); *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). Yet, while the

---

[10]    In an Opinion and Order dated February 9, 2024, this Court dismissed Quarles's Fourteenth Amendment claim against Goldberg for failing to allege a violation of the Equal Protection Clause. *See* ECF Nos. 40-41. *See also* ECF No. 20 (Goldberg moved to dismiss the Fourteenth Amendment claim for failing to plead an equal protection claim.). To the extent Quarles intended to bring a Fourteenth Amendment claim based on lack of consent, and in an abundance of caution to the pro se Plaintiff, this Court considers whether such a claim would survive summary judgment. *But see United States ex rel. Zaldonis v. Univ. of Pittsburgh Med. Ctr.*, No. 2:19-CV-01220-CCW, 2021 U.S. Dist. LEXIS 92001, at *13 (W.D. Pa. May 14, 2021) (explaining that "obtaining patient informed consent prior to surgery is a non-delegable duty that rests with the lead physician"). Notably, the Fourteenth Amendment claim proceeded to discovery as to Bontempo and the evidence is the same against both Defendants on this claim and for the Eighth Amendment claim. Thus, there was no prejudice to Quarles by dismissing the Fourteenth Amendment claim as to Goldberg earlier.

> contours of these two constitutional claims differ, both claims share a common
> element of intent, and require a showing of deliberate indifference to establish
> liability. Further, cases construing the reach of both the Eighth Amendment and
> substantive due process protections in a prison setting consistently hold that mere
> negligence cannot be equated with deliberate indifference.

*Mercaldo v. Fisher*, No. 1:13-CV-1139, 2017 U.S. Dist. LEXIS 14769, at *22-23 (M.D. Pa. Feb.

1, 2017).

Quarles does not dispute that he signed the consent form authorizing Bontempo to

perform a mastectomy; however, he contends that he was "pressured," "forced," and "tricked"

into signing the form. *See* Pl. Resp. Goldberg SJ at 6-8. Quarles alleges that Goldberg "knew

and [] should have known that [Quarles] was being forced and pressured into . . . surgery by . . .

Bontempo." *See* Pl. Resp. Goldberg SJ at 14. These allegations are conclusory and unsupported

by any evidence. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010)

("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to

overcome a motion for summary judgment."); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210,

222 (3d Cir. 2015) (finding that the plaintiff's allegations did not describe the defendants'

"conduct in sufficient detail to support her conclusory allegations that they had either actual

contemporaneous knowledge of or any personal involvement in any violation of her

constitutional rights"); *Allah v. Hayman*, No. 08-1177, 2010 U.S. Dist. LEXIS 26476, at *9

(D.N.J. Mar. 22, 2010) (determining that the plaintiff's allegations that the prison nurse "did

knowingly and reckless [sic] demonstrate deliberate indifference" and that the nurse's actions

"were motivated by evil motive or intent" were conclusory and therefore to be disregarded).

Quarles's allegation that the real concern of Goldberg was "money" and that he conspired with

Bontempo, *see* Pl. Resp. Goldberg SJ at 14, is also conclusory and not supported by any

evidence, *see Farmer-Shaw v. Wetzel*, No. 1:22-CV-00336-RAL, 2023 U.S. Dist. LEXIS

210893, at *9 (W.D. Pa. Nov. 28, 2023) (dismissing the Fourteenth Amendment claim because the inmate's allegations that did not give his informed consent to the vaccination were conclusory); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("We have held that to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."); *Del Rio v. Phillips*, No. 3:19-cv-00287-BAS-MDD, 2019 U.S. Dist. LEXIS 248614, at *13 (S.D. Cal. Apr. 22, 2019) (dismissing the Eighth Amendment inadequate medical care claim based on the prisoner's allegations that the doctor performed an "unnecessary surgery" "only to charge . . . more money").

Goldberg was not at the hospital on the day of Quarles's surgery, which is the same day he signed the consent form. There is no evidence that Goldberg knew of the circumstances surrounding Quarles's consent, that he was involved in the discussions about Quarles's consent and/or alleged refusal to a mastectomy, that he was personally involved in performing the mastectomy, that he caused Quarles to undergo a mastectomy, that he had the intent to deprive Quarles of his right to refuse surgery, or that he was otherwise deliberately indifferent to Quarles' right to refuse a mastectomy. *See Walker v. United States*, No. 3:23-cv-00220, 2025 U.S. Dist. LEXIS 23724, at *30 (W.D. Pa. Feb. 10, 2025) (finding that generalized allegations that a supervisor was "in charge of" or "responsible for" the medical personnel who treated the prisoner are insufficient to allege personal involvement); *Mercaldo*, 2017 U.S. Dist. LEXIS 14769, at *23 (explaining that a substantive due process claim based on an inmate's right to refuse treatment "require[s] a showing of deliberate indifference to establish liability").

In the absence of any evidence of Goldberg's personal involvement with Quarles's right to refuse a mastectomy, summary judgment is granted in Goldberg's favor on any Fourteenth Amendment claim.

      **C.**    **Summary judgment is granted in favor of Bontempo as to the Eighth Amendment claim.**

Quarles alleges that Bontempo did not follow proper procedures in diagnosing his gynecomastia. *See* Pl. Supp. Resp. Bontempo SJ 2 (citing medical journals and online research).[11] However, Quarles's disagreement with Bontempo as to the proper course of diagnosis and treatment is insufficient to state an Eighth Amendment claim. *See McCluskey*, 505 F. App'x at 203 (determining that the prisoner's complaints that his doctor should have ordered a biopsy was "a classic example of a matter for medical judgment, and does not represent cruel and unusual punishment" (internal quotations omitted)); *Hodge v. United States DOJ*, 372 F. App'x 264, 268 (3d Cir. 2010) (holding that disagreements between the prisoner and his physicians, or among physicians, concerning the course of medical treatment do not support a claim for a violation of the Eighth Amendment); *Merritt v. Dang*, No. CV F 04 6727 OWW LJO P, 2006 U.S. Dist. LEXIS 10620, at *5 (E.D. Cal. Mar. 14, 2006) (concluding that the prisoner's contention that the doctors treated him without first conducting a biopsy was insufficient to raise an Eighth Amendment claim).

"Courts will not second guess whether a particular course of treatment is adequate or proper." *Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emples.*, 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) (citing *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997)). "[I]t is well

---

[11]    Quarles's reliance on medical malpractice law in support of his Eighth Amendment claim is misplaced because "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

established that as long as a physician exercises professional judgment his behavior will not

violate a prisoner's constitutional rights." *Brown*, 903 F.2d at 278.  Quarles's has offered no

evidence to show that Bontempo acted based on anything other than his professional judgment.

Quarles's allegation that Bontempo "elected to go directly to surgery to use [him] as a tool for

profit," *see* Pl. Supp. Resp. Bontempo SJ 2, is conclusory and unsupported, *see Betts*, 621 F.3d at

252 ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to

overcome a motion for summary judgment."); *Farmer-Shaw*, 2023 U.S. Dist. LEXIS 210893, at

*9 (dismissing the inmate's conclusory claims against his doctor); *Del Rio*, 2019 U.S. Dist.

LEXIS 248614, at *13 (dismissing the Eighth Amendment inadequate medical care claim based

on the prisoner's allegations that the doctor performed an "unnecessary surgery" "only to charge

. . . more money").  The evidence shows that Bontempo did not initially intend to perform

surgery; rather, he first ordered a mammogram and only after seeing the ultrasound made the

determination that a mammogram was unnecessary and that a mastectomy was the appropriate

course if treatment.  *See* Ex. C at 20-21, 103.  When reaching this conclusion, Bontempo had

already met with Quarles, understood the history of Quarles's symptoms, conducted a physical

exam, and reviewed the ultrasound.  *See* Ex. C. at 20-21. *See also Mills v. Rogers*, No. 1:20-cv-

00266, 2020 U.S. Dist. LEXIS 212247, at *17-18 (M.D. Pa. Nov. 13, 2020) (explaining that

"only egregious acts or omissions may violate . . . [the] Eighth Amendment").  Thus, Quarles has

failed to show that Bontempo acted with deliberate indifference.  *See Scott v. Manenti*, 781 F.

App'x 65, 68 (3d Cir. 2019) (granting summary judgment in favor of the doctors because the

prisoner failed to produce any evidence that they acted with deliberate indifference; rather, the

undisputed facts showed that the doctors consistently exercised their professional judgment).

Given that the mass was growing quickly and causing pain, Quarles also failed to show that Bontempo harmed him by performing a mastectomy. *See Johnson v. Preston*, No. 4:22-CV-00420, 2023 U.S. Dist. LEXIS 41212, at *9 (M.D. Pa. Mar. 10, 2023) (dismissing the Eighth Amendment medical care claim because the prisoner was not harmed by the successful surgeries performed to correct his bicep tendon tears).

Summary judgment is granted in favor of Bontempo on the Eighth Amendment claim.

**D.    Summary judgment is granted in favor of Bontempo as to the Fourteenth Amendment claim.**

Quarles does not dispute that he signed the consent form authorizing Bontempo to perform a mastectomy; however, he alleges that Bontempo "pressured," "tricked," and "forced" surgery upon him. *See* Pl. Resp. Goldberg SJ at 7-8. As previously discussed regarding the Fourteenth Amendment claim against Goldberg, such allegations are conclusory. *See Betts*, 621 F.3d at 252 ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment."); *Farmer-Shaw*, 2023 U.S. Dist. LEXIS 210893, at *9 (dismissing the Fourteenth Amendment claim because the inmate's allegations that he did not give informed consent to the vaccination were conclusory). Although Quarles asserts Bontempo's medical notes reflect that he did not want to go through with the mastectomy, *see* Pl. Resp. Goldberg SJ at 7-8, the records reflect only that Quarles did not *initially* want to go through with the mastectomy but then changed his mind, *see* Ex. C at 28. Quarles's change of mind and consent to a mastectomy was also noted in the medical records written by Physician's Assistant Christen Sedlak. *See id.* at 27. Another individual witnessed Quarles sign the consent form to the mastectomy. *See id.* at 49. Bontempo also signed the form attesting that he had discussed the procedure with Quarles. *See id.* at 48-49. *See also* Ex. C at 28 (Medical records also show that Bontempo thoroughly explained the surgery to Quarles, as well as the risks

associated with not having the surgery and the risks of surgery.).[12]  Additionally, Quarles signed

a separate form consenting to anesthesia, which the anesthesiologist Carl Vorwerk also signed,

see ECF No. 69-3 at 63-64 (Ex. H).  The anesthesia consent form contradicts Quarles's

suggestion in opposition to summary judgment that he thought only his arm would be operated

on and that he would not have to go under anesthesia.  *See* Pl. Resp. Goldberg SJ at 8.

Bontempo therefore met its initial burden for summary judgment, requiring Quarles to

"adduce through affidavits or otherwise 'more than a scintilla of evidence' that a material fact

remains in dispute." *Pearson v. Vaugh*, 984 F. Supp. 315, 316 (E.D. Pa. 1997) (quoting *Williams*

*v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1990).  "Conclusory statements in

affidavits about the existence of facts do not provide the kind of evidence required to

successfully oppose summary judgment." *Pearson*, 984 F. Supp. at 316 (citing *Lujan v. National*

*Wildlife Federation*, 497 U.S. 871, 889 (1990)).  Quarles has offered nothing more than

conclusory attestations that his consent was not voluntary and that Bontempo acted with

deliberate indifference to further his own desire for money.  *See* Pl. Supp. Resp. Bontempo SJ 2;

Pl. Resp. Goldberg SJ 10-11.  This is insufficient to survive summary judgment.  *See Mercaldo*,

2017 U.S. Dist. LEXIS 14769, at *8 (entering summary judgment in favor of the doctor on the

prisoner's Eighth and substantive due process claims, and rejecting the prisoner's argument that

his consent to surgery "was not fully informed because he was taking medication, was confused,

and did not have his eyeglasses with him" as there was "nothing in the evidentiary record

permit[ing] any inference that Dr. Kansal had any grounds to doubt [the prisoner's] written

---

[12]     *Leaphart v. Prison Health Servs.*, No. 3:10-CV-1019, 2011 U.S. Dist. LEXIS 64670, at
*2-3 (M.D. Pa. June 17, 2011) (granting the defendants' motion for summary judgment as to the
Fourteenth Amendment claim where the evidence showed that the prisoner was informed of his
medical options, of the possibility of the need for additional surgery, and was advised on an
informed consent form, which he signed)

expression of his informed consent"); *Colon v. Peppers*, No. 3:20-1977, 2021 U.S. Dist. LEXIS 100144, at *13 (M.D. Pa. May 27, 2021) (rejecting the prisoner's Eighth Amendment claim based on the alleged removal of wisdom teeth without consent in light of the form the prisoner executed authorizing the extraction); *Allah*, 2010 U.S. Dist. LEXIS 26476, at *9 (determining that the plaintiff's allegations that the prison nurse "did knowingly and reckless [sic] demonstrate deliberate indifference" and that the nurse's actions "were motivated by evil motive or intent" were conclusory and therefore to be disregarded).

Summary judgment is granted in favor of Bontempo on the Fourteenth Amendment claim.

## V.    CONCLUSION

The evidence shows that Goldberg provided Quarles with timely and adequate medical care, including a referral to Bontempo.  Following the referral, Goldberg was not involved with Quarles's medical treatment, including his mastectomy, and cannot be held vicariously liable for the medical decisions of Bontempo.  Quarles's disagreement with Bontempo's decisions cannot state a constitutional claim and there is no evidence to show that Bontempo acted with deliberate indifference to Quarles's medical needs or right to refuse surgery.  Summary judgment is granted in Defendants' favor on all claims.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge