UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN L. QUARLES,<br>      Plaintiff, | :<br>:<br>: |
| v. | :   No. 2:23-cv-01601<br>: |
| DOMINIC J. BONTEMPO and<br>JASON GOLDBERG,<br>      Defendants. | :<br>:<br>: |

**O P I N I O N**
Plaintiff's Motion for Reconsideration, ECF No. 98 - Denied

**Joseph F. Leeson, Jr.**                                                                                                  October 7, 2025
**United States District Judge**

**I.      INTRODUCTION**

Plaintiff Kevin Quarles, who is incarcerated at SCI-Phoenix, initiated the above-captioned action against his doctors pursuant to 42 U.S.C. § 1983 asserting violations of his constitutional rights arising from an alleged unnecessary operation performed on him, for which he allegedly did not consent. In the absence of evidence to support his claims, summary judgment was granted in favor of Defendants and against Quarles. Quarles has now filed a Motion for Reconsideration. This Motion is denied for the reasons set for below.

**II.     BACKGROUND**

The material facts and procedural history of this case were discussed in the Opinion dated July 2, 2025, *see* ECF No. 92, which is incorporated herein. Each are summarized below.

   **A.      Factual Background**

Quarles, an inmate at SCI-Phoenix, presented to prison triage complaining of a right breast mass and was seen by Defendant Jason Goldberg, MD. After initial testing and treatment,

Goldberg referred Quarles for a consult to an off-site doctor, Defendant Dominic J. Bontempo M.D. Bontempo saw Quarles for a consult for the mass in his right breast, as well as a ganglion cyst in his right shoulder. They discussed the possibility of excising the mass in his breast and scheduled surgery to remove the cyst in his shoulder. The day after the consult, Bontempo received the ultrasound of Quarles's right breast. This test was sufficient for Bontempo to recommend a right subcutaneous mastectomy, which he scheduled at the same time as the surgery on Quarles's shoulder.

Approximately two weeks before the surgery, Quarles underwent pro-op testing, at which time he learned that a mastectomy was also scheduled. The day before surgery, Quarles advised a nurse in the infirmary at SCI-Phoenix that he did not want surgery until all testing was complete. He nevertheless went to the hospital the following day, at which time Bontempo advised Quarles of the risks of not getting the mastectomy and that the mass could be breast cancer. Quarles initially refused a mastectomy,[1] but had additional discussions with Bontempo about the risks of surgery and of waiting. According to Bontempo and medical records, Quarles changed his mind about the mastectomy and consented to have both procedures: the excision of the mass/cyst in his shoulder and the excision of the mass in his breast. Quarles signed a form consenting to both procedures.[2]

Both surgeries (right subcutaneous mastectomy and excision of ganglion cyst from right shoulder) were performed on July 23, 2021. Later that day, Quarles returned to SCI-Phoenix, stating that everything was fixed and denying any injuries from his trip. Thereafter, Quarles

---

[1] Quarles only disputes that he consented to a mastectomy. He acknowledges his consent to excision of the cyst on his shoulder.

[2] Quarles does not dispute that he signed the form, but contends that he was "pressured," "forced," and "tricked" into consenting to the mastectomy.

2
100325

reported swelling in his right breast and bruising at the surgical site. He was seen by prison medical at least six times in the following three months to check on his chest and the surgical site. As of October 4, 2021, the swelling in his right breast had not gone down since the surgery.

### B.    Procedural Background

On or about April 24, 2023, Quarles initiated the above-captioned action, alleging that Doctors Bontempo and Goldberg violated his rights under the Eighth and Fourteenth Amendments by performing a mastectomy to which he did not consent. See ECF No. 2. After completion of discovery, Goldberg and Bontempo, on August 13, 2024, and September 9, 2024, each moved for summary judgment. See ECF Nos. 67-69. Quarles responded in opposition to the motions in October 2024.[3] See ECF Nos. 71, 73. In his response to Bontempo's Motion for Summary Judgment, Quarles stated that he never received a copy of the Motion. See ECF No. 73. Accordingly, on October 23, 2024, this Court directed the Clerk's Office to mail a copy of Bontempo's Motion to Quarles and afforded him until November 22, 2024, to respond. See ECF No. 75. On November 26, 2024, a bankruptcy stay was entered. See ECF No. 79.

Shortly after the stay was entered, Quarles filed summary judgment motions and/or supplemental responses to Defendants' Motions for Summary Judgment. See ECF Nos. 80, 83. The first page of each filing referred to Quarles's "Motion for Summary Judgment," but the second pages referred to Quarles's "Response" to Defendants' filing. See id. Because these filings were docketed as motions, not responses, responses to the "motions" were ordered on May 28, 2025, when the bankruptcy stay was lifted. See ECF No. 87.[4] Bontempo, construing

---

[3]    The same month, Bontempo and Goldberg filed replies. See ECF Nos. 72, 74.
[4]    When docketed, the Clerk's Office erroneously described ECF No. 80 on the docket as a motion filed by Defendant Bontempo, instead of by Quarles. This Court did not realize the error when it initially ordered responses to the filings. See ECF No. 87 (directing Quarles to "file a supplemental response to Defendant Bontempo's Motion for Summary Judgment, ECF No.

Quarles's filing as a supplemental response, filed a supplemental reply. *See* ECF No. 88. Goldberg, however, construed Quarles's filing as a motion and filed a response. *See* ECF No. 89. In the Opinion dated July 2, 2025, this Court stated that because neither of Quarles's filings contained the required statement of material facts, he did not satisfy his burden of proof for summary judgment;[5] therefore, owing deference to pro se parties, this Court treated the filings as supplemental responses to Defendants' motions. *See* Opn. 2 n.1, ECF No. 93.

The Opinion explained that the undisputed evidence showed that Goldberg provided Quarles with timely and adequate medical care, including a referral to Bontempo, after which he was no longer involved with Quarles's medical treatment. *See id.* Because Goldberg could not be held vicariously liable for the medical decisions of Bontempo, summary judgment was granted in his favor. *See id.* Summary judgment was also granted in Bontempo's favor because Quarles's disagreement with Bontempo's decisions did not state a constitutional claim and there was no evidence to show that Bontempo acted with deliberate indifference to Quarles's medical needs or right to refuse surgery. *See id.*

Quarles has since filed a Motion for Reconsideration (or to Alter or Amend Judgment) pursuant to Rule 59(e). *See* ECF No. 98. Quarles argues that this Court improperly weighed the evidence of whether he consented to surgery, instead of deciding whether there was a genuine dispute of material fact as to consent. *See* Brief 3, 7-8, ECF No. 98. He also contends that Goldberg had a duty to intervene, and that the DOC must approve all off-site medical treatments

---

80."). However, when Quarles sought an extension of time to respond, this Court caught the docketing error, directed the Clerk's Office to correct the description on the docket, and dismissed Quarles's request for an extension as moot. *See* ECF No. 91 (deeming Quarles's "motion" as "a response to Bontempo's motion").

5   Additionally, the deadline to file summary judgment motions, which was September 9, 2024, had expired. *See* ECF No. 65.

"long before they occur." *See id.* at 5, 8-11.  Bontempo and Goldberg filed Responses in opposition to the Motion for Reconsideration, asserting that Quarles has failed to sustain his burden under Rule 59(e) because he has not presented any new evidence that was previously unavailable, nor has there been a change in the controlling law.  *See* Bontempo Resp. 3-4, ECF No. 100; Goldberg Resp. 3, ECF No. 99.  They each argue that this Court correctly found no genuine dispute of material fact to survive summary judgment, and that Quarles now merely disagrees with the Court's findings, which is not a basis to grant reconsideration.  *See* Bontempo Resp. 2-3; Goldberg Resp. 3-4 (noting that this Court went out of its way to parcel out Quarles's arguments and review the medical records even though Quarles did not contest defendants' statements of undisputed facts).  In his Reply brief, Quarles asserts that he is not relying on new evidence; rather, he states that he is citing to evidence that should have been considered by the Court at the time it issued its decision.  *See* Reply 3 (citing Supp., ECF No. 95), ECF No. 101.

## III.   LEGAL STANDARDS

### A.   Rule 59(e), Motion to Alter or Amend Judgment – Review of Applicable Law

"A motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and used to allege legal error" *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) (internal quotations omitted).  The purpose of a motion to alter or amend judgment, also called a motion for reconsideration, "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Keifer v. Reinhart Foodservices, LLC*, 563 F. App'x 112, 114-15 (3d Cir. 2014).  "The scope of a motion brought under Rule 59(e) is extremely limited." *Amor v. Conover*, No. 5:21-cv-05574-JMG, 2023 U.S. Dist. LEXIS 145023, at *5 (E.D. Pa. Aug. 18, 2023) (internal quotation marks omitted).  A "judgment may be altered or amended if the party seeking

reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe*, 176 F.3d at 677. "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-28 (2d ed. 1995)).

B.      **Section 1983 claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and

acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

### C. Eighth Amendment (inadequate medical care) - Review of Applicable Law

To state an Eighth Amendment claim regarding the inadequacy of medical care, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011). The "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs [because i]t is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is serious if it has been diagnosed by a physician as requiring treatment or so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Young v. Kazmerski*, 266 Fed. Appx. 191, 194 (3d Cir. 2008). Mere negligence in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Disagreement as to proper care also does not support a finding of deliberate indifference. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

### IV. DISCUSSION

In seeking reconsideration, Quarles cites to exhibits and a supplemental brief (collectively "supplement") that were received by this Court on July 9, 2025, a week after the

case was closed. *See* Brief 6 (citing Supp. Ex. E-1, ECF No. 95). Based on the prison mailbox rule, the filing date of the supplement is July 2, 2025,[6] which is the same day this Court issued its Opinion granting summary judgment. *See id.* Quarles now argues it was error for this Court, on June 16, 2025, not to have granted him an extension of time to file the supplement. *See* Reply 6. He asks this Court to consider the supplement *nunc pro tunc* due to his limited library time in prison. *See id.* at 7-8. Time which he alleges was wasted by the Clerk's clerical error in describing ECF No. 80 as having been filed by Bontempo and by this Court's Order directing Quarles to respond to the same. *See* ECF No. 87. Quarles asserts he was prejudiced by the mistake because he could have dedicated his time to filing his supplement sooner. *See* Reply 8.

Quarles's allegation of prejudice misses the mark as he would have never been ordered to respond had the Clerk's Office not erred in describing ECF No. 80 on the docket.[7] Defendants' Motions for Summary Judgment were filed on August 13, 2024, and September 9, 2024, and were fully briefed by November 2024. After November 2024, no leave was given to file supplemental briefs to *these* Motions for Summary Judgment. Therefore, Quarles should not have been spending any time in the law library (or after November 2024) as it related to Defendants' Motions for Summary Judgment or preparing a supplement to the same.[8] His allegation of prejudice is therefore meritless.

---

[6] Although the Certificate of Service is dated July 1, 2025, the brief is dated July 2, 2025. *See* ECF No. 95. The latter date is also the date Quarles asserts that he placed the filing in the prison mailbox. *See* Reply 8.

[7] *Accord* ECF No. 87 (Order directing "Defendant Goldberg shall file a response to Plaintiff's Motion for Summary Judgment, ECF No. 83.").

[8] *See* E.D. Pa. Local Rule 7.1(c) ("The Court may require or permit additional briefs or submissions if the Court deems them necessary. Counsel are directed to consult each judge's policies and procedures."); Judge Leeson's Policies and Procedures § II(F)(3) ("A party may file a sur-reply brief only with permission of the Court upon good cause shown."), https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/leepol.pdf.

Because Defendants' Motions for Summary Judgment were fully briefed and had been pending for seven (7) months,[9] this Court did not err when it denied Quarles's motion for an extension of time to file a supplemental response. His request for an "extension" of time was clearly triggered by this Court's order directing him to "file a supplemental response to Defendant Bontempo's [intervening] Motion for Summary Judgment, ECF No. 80." *See* ECF No. 87. As explained when Quarles's extension request was denied, however, "the Clerk's description of ECF No. 80 is incorrect as it is not a motion filed by Defendant Bontempo but was filed by Plaintiff, *see* ECF No. 80." ECF No. 91. It would be illogical to order a party to respond to his own motion. For this reason, and in the absence of any suggestion in Quarles's motion that there was good cause to allow a supplement,[10] there was no error in denying an extension.

Having now reviewed the supplement, this Court again finds there was no error in denying an extension and no good cause to allow a supplemental filing, nor is reconsideration needed to prevent manifest injustice. The supplement included two new briefs in opposition to Defendants' Motions for Summary Judgment. *See* Supp. 1-21 and Ex. G-1. Neither brief contains anything that would have, or does, change this Court's decision granting summary judgment. The briefs are largely repetitive of Quarles's prior arguments, which were considered and rejected. Similarly, Quarles included two pages of medical records in the supplement, *see id.* at E-1 and F-1, that were already before the Court. These records were specifically discussed in the Opinion granting summary judgment. *See* Opn. 5 (citing Ex. C at 103, ECF No. 67-4); Opn. 6 and n.3 (citing Ex. C at 27-28).

---

[9]    The Motions were pending for so long only because of the bankruptcy stay.
[10]   Quarles only offered reasons why an extension was needed, not why a supplemental response to Defendants' Motions was needed. *See* ECF No. 90; footnote 8 *supra*.

The supplement also contained one newly raised argument and one exhibit not previously in the record. Specifically, Quarles asserted that when he returned to SCI-Phoenix after the surgery, a prison nurse saw his bandages, looked at his medical records, and exclaimed: "They performed a subcutaneous mastectomy on you! They were suppose to only give you a mammogram. If I was you I would contact a lawyer!". *See* Supp. 4. Because Quarles did not provide an affidavit from this unnamed nurse or explain how her alleged statement, which is hearsay, would be admissible at trial, it could not be considered on summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue); *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 (3d Cir. 1995) ("[H]earsay statements can be considered on a motion for summary judgment **if** they are capable of being admissible at trial." (emphasis added)).[11] The new exhibit,[12] a declaration by a prisoner at SCI-Phoenix that the medical department altered the prisoner's medical records in 2022, also could not be considered on summary judgment because it was not made under penalty of perjury. *See United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019) (holding that an unsworn statement not made under penalty of perjury cannot be considered on summary judgment); *Payne v. Gourley*, No. 25-1765, 2025 U.S. App. LEXIS 24663, at *9 (3d Cir. Sep. 24, 2025) (explaining that pro se litigants are bound by the requirement that statements offered in opposition to

---

[11] "In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). The proponent of hearsay must explain the admissible form in which it anticipates producing at trial. *See id.*; *Travillion v. Wetzel*, No. 24-1763, 2025 LX 213400, at *4 (3d Cir. Apr. 1, 2025). Quarles made no such explanation, nor can this Court perceive of one given that he failed to identify the nurse by name.
[12] *See* Supp. H-1

summary judgment must be made under penalty of perjury). Accordingly, there was nothing in the supplement that this Court could have considered in deciding Defendants' Motions for Summary Judgment that was not already considered. Moreover, even if everything in the supplement is considered, nothing creates a genuine dispute of material fact. For these reasons, this Court's denial of Quarles's motion to extend time to file a supplemental response was not in error and does not necessitate reconsideration to prevent manifest injustice.

Quarles also suggests that this Court erroneously weighed the evidence about his consent to surgery instead of deciding whether there was a genuine dispute of material fact. *See* Brief 2-3, 7-8.[13] However, his argument is nothing more than disagreement with the Court's conclusions. As the Opinion explained, because Quarles signed the consent to surgery form, which he did not dispute, Bontempo met his "initial burden for summary judgment, requiring Quarles to 'adduce through affidavits or otherwise 'more than a scintilla of evidence' that a material fact remains in dispute.'" Opn. 20-21 (quoting *Pearson v. Vaugh*, 984 F. Supp. 315, 316 (E.D. Pa. 1997) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1990))). Quarles failed to produce *any* such evidence; rather, he "offered nothing more than conclusory attestations that his consent was not voluntary and that Bontempo acted with deliberate indifference to further his own desire for money." *See id.* (citing cases). Similarly, there was "no evidence that Goldberg had any discussions with Bontempo regarding the proper course of treatment or was otherwise involved with Quarles's treatment by Bontempo." *See* Opn. 13 (rejecting Quarles's attempt to hold Goldberg vicariously liable for Bontempo's actions

---

[13] In support, he cites to a single page from his medical records, which states that at 7:10 A.M., Quarles "ultimately refused the procedure" (mastectomy). *See* Memo. 6 (citing Ex. E-1). However, in discussing this record in the Opinion granting summary judgment, this Court explained that "[a]ccording to medical records, Quarles changed his mind about the mastectomy approximately thirty minutes later." *See* Opn. 4.

(citing *Rode*, 845 F.2d at 1207 (holding that § 1983 liability cannot be predicated on respondeat superior)).  Thus, summary judgment was granted not because of the weight of the evidence, but because of the absence of evidence supporting Quarles's claims.

He has failed to show the need to correct a clear error or to prevent manifest injustice. Quarles also has not suggested there has been a change in controlling law or the availability of new evidence.[14]  *See* Reply 3 (Quarles admits that his Motion for Reconsideration is not based on new evidence).  "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."  *Cont'l Cas. Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).  This extraordinary remedy is not warranted here.

## V.     CONCLUSION

For the reasons discussed herein, Quarles, who essentially disagrees with the Court's decision granting summary judgment, has not shown the need to correct a clear error or to prevent manifest injustice, nor has he suggested that there has been a change in controlling law or the availability of new evidence, which would justify the sparingly granted remedy of reconsideration.  His Motion for Reconsideration is denied.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[14]   "'[N]ew evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010) (concluding that because nothing in the record suggested that the evidence the plaintiffs sought to present post summary judgment was previously unavailable, the district court did not abuse its discretion in denying the plaintiffs' motion for reconsideration).